IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SOUTHERN NATURAL GAS COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action Number |
| vs. | ) ) ) | 2:11-cv-00191-AKK-CSC |
| APPROXIMATELY 1.06 ACRES OF TAX PARCEL NO. 17-05-21-0-002-008.00; *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter is before the court for a determination of compensation to Donald B. and Lucinda C. Hines for the condemnation of a portion of their property for a temporary workspace easement. After careful review of the Hines' objections and their supporting documents, for the reasons stated below, the court awards the Hines $34,680.00, plus interest.

**A.    Brief Procedural Background**

On June 13, 2011, the court condemned approximately 1.06 acres of tax parcel no. 17-05-21-0-002-008.00, owned by Defendants Donald B. and Lucinda C. Hines, for a temporary workspace easement due to the expansion of a natural

1

gas line by Plaintiff Southern Natural Gas Company ("SNG").[1] Doc. 21. Thereafter, pursuant to Federal Rule of Civil Procedure 71.1(h), which provides that "the court tries all issues, including compensation" in eminent-domain actions and that the court may "appoint a three-person commission to determine compensation," the court advised the parties of the identities and qualifications of prospective commissioners and provided a period of time for the parties to object to the appointments. Doc. 22. Having received no objections, the court appointed the Commission "to determine compensation because of the character, location, or quantity of the property to be condemned or for other just reasons," as required by Rule 71.1(h)(2)(A). *Id.* After the commissioners presented their report in which they valued the condemnation at $24,232.00, doc. 23-2, the court held a hearing to allow the parties to object and to present any additional evidence in support of their respective valuations, doc. 23.

**B.   Conflicting Valuation Methods**

SNG does not challenge the commissioners' report. The Hines, however, filed objections, doc. 24, and also appeared at the hearing where they fully stated

---

[1] The full parcel, which includes the home of Mr. and Mrs. Hines, consists of 4.68 acres and is situated at 198 Anderson Lane in Wetumpka, Alabama. Doc. 23-2. Before the condemnation, it had a value of $242,324.00 and, as of June 27, 2011, had a post-condemnation value of $218,092.00. *Id.*

2

their objections and presented additional evidence. Basically, the Hines believe the commissioners and SNG significantly undervalue the loss the Hines have incurred by only quantifying the loss based on the overall value of the property.[2] The Hines assert that the proper calculation is the value of the trees that SNG removed to create the temporary workspace. In that regard, the Hines valued their loss at $245,128.62, based on the Trunk Formula Method which they contend "is used to appraise the monetary value of trees that are too large to be replaced with nursery stock."[3] Doc. 24-10 at 1. Significantly, the Hines' value for the trees exceeds the total $242,324.00 pre-condemnation value of their entire property. Doc. 23-2 at 1-5. This difference in valuation is based primarily on the subjective premium the Hines place on the character of their backyard and the change in its makeup as a result of the trees SNG removed for the gas line expansion. *See* transcripts of June 14, 2011, and August 23, 2011, hearings. Courts have frequently faced this issue of the inherent conflict between the appraised value and the property owners' subjective valuation of their property. As the Seventh

---

[2]SNG obtained its own appraisal prior to the appointment of the commissioners and SNG valued the taking at $24,003.00. *See* doc. 24-8 at 1-3.

[3]After the commissioners issued their report, the Hines reduced the amount to $181,596: "The value of the trees in the area were appraised in June 2011 at $242,128 [sic] . . . . Since the temporary workspace was reduced by pipeline officials by 15 feet, we request 75% ($181,596) of that amount for the value of our trees." Doc. 24 at 3.

Circuit Court of Appeals described it,

> Many owners are "intramarginal," meaning that because of relocation costs, sentimental attachments, or the special suitability of the property for their particular (perhaps idiosyncratic) needs, they value their property at more than its market value (i.e., it is not "for sale"). Such owners are hurt when the government takes their property and gives them just its market value in return. The taking in effect confiscates the additional (call it "personal") value that they obtain from the property, but this limited confiscation is permitted provided the taking is for a public use.

*Coniston Corp. v. Village of Hoffman Estates, et al.,* 844 F.2d 461, 464 (7th Cir. 1988).

Here, the "intramarginal" or sentimental attachment is the premium the Hines place on having a backyard filled with grown trees – e.g., shade from the summer heat, the ability to sit in comfort on their deck as a result, and the maintenance free nature of it – all of which they have now lost. While the court is sympathetic to the Hines, the damages they seek are simply not allowed under the law that this court is bound to follow. Rather, the court can only award the Hines "just compensation," which, according to the United States Supreme Court, "means in most cases *the fair market value of the property* on the date it is appropriated. Under this standard, the owner is entitled to receive 'what a willing buyer would pay in cash to a willing seller' at the time of the taking." *Kirby Forest*

*Indus., Inc. v. United States,* 467 U.S. 1, 10 (1984) (citations and quotations omitted) (emphasis added).

### C. The Fair Market Value

In this case, based on the commissioners' report, the fair market value is $24,232.00, which is roughly only a tenth of the $245,128.62, the Hines sought initially. The Hines, of course, believe the fair market value approach does not adequately compensate them and, therefore, challenge its use in determining valuation of the taking. Unfortunately for the Hines, the Supreme Court recognized in *Kirby Forest* the possibility that the fair market value approach may not fully compensate property owners for their loss and has stated that the need for clarity works against the use of a subjective approach that attempts to identify the "special value" the homeowner places on his property:

> We have acknowledged that, in some cases, this standard fails fully to indemnify the owner for his loss. Particularly when property has some special value to its owner because of its adaptability to his particular use, the fair-market-value measure does not make the owner whole. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 511–512, 99 S. Ct. 1854, 1857–1858, 60 L. Ed.2d 435 (1979). We are willing to tolerate such occasional inequity because of the difficulty of assessing the value an individual places upon a particular piece of property and because of the need for a clear, easily administrable rule governing the measure of "just compensation." *Id.*

*Id.* at *n.* 15; *see also Coniston Corp.,* 844 F.2d at 464 ("Compensation in the constitutional sense is therefore not full compensation, for market value is not the value that every owner of property attaches to his property but merely the value that the marginal owner attaches to his property.").

Therefore, consistent with the case law, the court rejects the Hines' valuation of $181,596.00 because the Trunk Formula Method they use is not the proper standard.  The court also overrules the Hines' objections to the commissioners' report, *see* doc. 24, because the objections are grounded primarily on the Hines' belief that the commissioners failed to account for the special value the Hines place on having a backyard filled with grown trees.  Moreover, the court cannot accept the Hines' valuation figure because it is derived from a number ($245,128.62), *see* doc. 24-10 at 1, that exceeds the pre-condemnation fair market value of their *entire* property ($242,324.00), *see* doc. 23-2 at 1-5.  To award the Hines the $181,596.00 would mean that, despite independent evidence that the taking here only diminished the value of their property by $24,232.00, *see* doc. 23-2*,* the court believes instead that the Hines would realize a loss in value of $181,596.00 if they were to sell their property.  Such a finding is contrary to the evidence before this court and would be reversed on appeal.  In fact, based on the evidence, awarding the Hines the $181,596.00 they seek would result in a

significant windfall that the law does not allow. Therefore, over the Hines' objections, the court declines to award them the $181,596.00 they seek and, instead, will follow the law and award the Hines "just compensation," which, again, "means in most cases the fair market value of the property on the date it is appropriated." *See Kirby Forest,* 467 U.S. at 10.

**D.     Compensation Amount**

Accordingly, based on the evidence before this court, the court adopts the independent commissioners' report, which is based on the applicable fair market value approach, and finds that the actual fair market value of the taking here is $24,232.00. However, the court declines to limit the award to the Hines solely to this amount because doing so "would result in manifest injustice to [the] owner[s] . . . ."[4] *Id*. at n. 14. The court finds that the $24,232.00 fair market value loss is the improper amount to award in this case, in part, because it is less than the $32,180.00 estimate the Hines received to replace the trees. Doc. 24-11 at 2. As such, the $24,232 fair market value fails to account for what the Hines must pay to "replace their condemned property with more expensive substitutes," – which the

---

[4]Although the Supreme Court instructs that courts must apply the fair market value approach, the Court allows courts to utilize other approaches in limited situations: "Other measures of 'just compensation' are employed only 'when market value [is] too difficult to find, or when its application would result in manifest injustice to owner or public . . . .'" *Kirby Forest,* 467 U.S. at n. 14 (alteration in original and citations omitted).

Supreme Court has stated is a component of fair market value. *See 50 Acres of Land*, 469 U.S. 24, 33 (1984). Consequently, the court believes that "just compensation" is instead the cost to replace the trees and, accordingly, awards Donald B. and Lucinda C. Hines $32,180.00. Finally, to further avoid "manifest injustice" and to address the Hines' need to provide some general care to the trees they plant and the rest of their backyard, including, but not limited to, costs to pay a lawn service, – all of which are costs the Hines did not previously have, the court awards the Hines an additional $2,500.00.[5]

Based on the foregoing, a separate final judgment will be entered in this case for $34,680.00,[6] plus interest at 0.18%[7] beginning on June 13, 2011, for a total amount, as of today, March 22, 2012, of $34,728.40.[8]

---

[5]This amount is based on the $70 estimate the Hines received from 4 Season Irrigation & Landscape, doc. 24-12, and Mr. Hines' estimate that he expected it would take three visits each month to maintain the backyard. Assuming a monthly expenditure of $210, the $2,500 should help the Hines cover the costs for the 2012 and 2013 spring and summer growing seasons.

[6]Consistent with the fact that only the condemnation and its valuation are before this court, *see* doc. 1, this judgment amount is for the condemnation only and does include the costs to address the ongoing run-off issues the Hines are experiencing. SNG has enlisted CH2M HILL to address these issues, and presumably will do so to the Hines' satisfaction.

[7]To determine the interest rate, pursuant to 40 U.S.C. § 3116, the court uses the weekly average one-year constant maturity Treasury yield, published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of taking, i.e., June 10, 2011. In this case, it is 0.18%, which yields a daily interest of approximately $0.171.

[8]SNG will obviously have to add the daily interest amount of $0.171 from the date of this order until it tenders a check to the Hines.

**DONE** this 22nd day of March, 2012.

                                                        **ABDUL K. KALLON**
                                        UNITED STATES DISTRICT JUDGE